

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SLT
F.#2010R00289

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

July 6, 2012

By ECF and Hand

The Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  United States v. Carmelo Ruiz
>      Criminal Docket No's. 08-916 (S-5)(SLT)

Dear Judge Townes:

The government respectfully submits this letter in response to the defendant's objections to the Presentence Investigation Report ("PSR") and sentencing memorandum. Sentencing is scheduled for July 13, 2012 at 10:00 a.m.  For the reasons set forth below, the PSR correctly calculates the defendant's offense level (21) and criminal history (Category II), yielding an advisory Guidelines range of 41 to 51 months. Pursuant to the plea agreement, however, the government moves for a two-level reduction in the defendant's advisory Guidelines range in light of the global disposition resulting in more than 30 co-defendants accepting guilty pleas (reducing the offense level to 19).  Accordingly, the government respectfully requests that the Court sentence the defendant within the adjusted advisory Guidelines range of 33 to 41 months.[1]

---

[1] The government concurs with the defendant's objection to ¶ 2 of the PSR with respect to its description of the forfeiture provisions of the plea agreement.  The plea agreement contemplates a forfeiture judgment of $10,000.00 to be paid prior to the completion of the defendant's term of supervised release. The government will submit a final order of forfeiture commensurate with these terms on the date of sentencing.

I.   <u>Background</u>

For more than five years, the Drug Enforcement Administration ("DEA") has been investigating a large-scale drug trafficking organization responsible for smuggling thousands of kilograms of hydroponic marijuana into the United States from Canada, primarily through the Akwesasne Native American Reservation that straddles the U.S. - Canadian border in upstate New York.  The investigation revealed that beginning in approximately 2000, Canadian sources of supply utilized transportation networks headed by defendants David Sunday, Randolf Square and Kenneth Cree to smuggle marijuana through the reservation and down to wholesale distributors in the United States.  Major distributors in the New York area included, among others, Sean Werner and Guy Gantz.  These wholesale distributors, in turn, supplied numerous other distributors, who sold the narcotics throughout the New York metropolitan area.

The investigation further revealed that the defendant CARMELO RUIZ was involved in the marijuana trafficking conspiracy from at least 2000.  Specifically, beginning in early 2000, a Queens-based distribution cell headed by Sean Werner began receiving large shipments of Canadian marijuana through the reservation.  The marijuana was smuggled into the United States and delivered to Queens (and other locations) primarily by David Sunday's transportation network.  At the time, co-defendants Guy Gantz, Slobodan Pavicevic and Walter Baus worked for Sean Werner.  RUIZ was one of the group's earliest distributors for the Canadian marijuana, as he had a prior relationship with Sean Werner dating back several years, during which time the two had worked together distributing marijuana locally in Queens.

RUIZ continued to distribute marijuana supplied directly by Werner for several years until an incident in late 2002 / early 2003, in which one of RUIZ's marijuana customers was arrested in possession of drugs supplied by Werner.  Following the incident, Werner stopped supplying RUIZ directly.  However, RUIZ continued to receive marijuana from Werner's distribution group, indirectly, through co-defendant Slobodan Pavicevic, also known as "Bobby."  In February 2003, DEA agents executed a search warrant on RUIZ's home on Long Island.  During the search, agents recovered a suitcase containing bulk marijuana, several zip-lock bags containing marijuana packaged for distribution, a bundle of United States currency, a triple beam balance scale and 38 clear plastic zip-lock bags.  RUIZ was arrested and charged with marijuana distribution in connection with this incident, but ultimately the charges were dismissed on June 12, 2003.

RUIZ also distributed marijuana provided by other suppliers, but in mid 2007, he resumed his relationship with co-defendants Slobodan Pavicevic and Walter Baus, and once again started distributing marijuana supplied by Pavicevic. In approximately December of the same year, RUIZ learned that co-defendant Guy Gantz was the source supplying marijuana to Pavicevic and other distributors. By this time, Gantz had begun receiving marijuana directly from co-defendant David Sunday's smuggling network (bypassing Sean Werner as a middleman). RUIZ subsequently began taking marijuana directly from Gantz and engaged in multiple marijuana transactions with Gantz from December 2007 through March 2008. On March 25, 2008, RUIZ was arrested by officers from the Nassau County Police Department after he picked up three garbage bags containing 25 pounds of marijuana from Guy Gantz at a stash house in Queens that was the residence of co-defendant Walter Baus.[2/]

In February 2009, a Third Superseding Indictment was returned in the Eastern District of New York, which charged CARMELO RUIZ and numerous co-defendants (including Sunday, Gantz, Pavicevic and Baus) with engaging in a conspiracy to import marijuana, a conspiracy to distribute marijuana and a conspiracy to launder the proceeds of narcotics trafficking. Two subsequent superseding indictments added additional defendants and expanded the time period of the conspiracy.

On February 24, 2011, the defendant pled guilty to a lesser included offense within Count Four of the above-captioned indictment, charging that between January 2000 and February 2009, the defendant conspired to distribute at least 50 kilograms of marijuana. In conjunction with his plea, the defendant stipulated that he should be held accountable for the distribution of at least 80 kilograms of marijuana.

II. <u>Defense Objections to the PSR</u>

The defendant contends that the PSR incorrectly assigns him three criminal history points for a 1989 conviction involving

---

[2/] The PSR incorrectly states that this incident involved "11 pounds of marijuana." PSR ¶¶ 11, 104. In fact, RUIZ was arrested in possession of just over 11 <u>kilograms</u> of marijuana (approximately 25 pounds).

the sale of cocaine.[3]  Specifically, the defendant claims that because his involvement in the instant offense began on March 25, 2008, it is more than 15 years after the termination of his incarceration for the 1989 conviction.  The defendant contends, therefore, that the conviction should not be awarded any criminal history points and that he should be sentenced within Criminal History Category I. (Def. Mem. at 3-4).  The defendant further argues that because he is within Criminal History Category I, the PSR improperly denies him relief under the "safety-valve" provision - U.S.S.G. §§ 2D1.1(b)(16) and 5C1.2. (Def. Mem. at 2-3).

      Defendant's arguments are without merit, factually inaccurate and in many instances, grossly inconsistent with his own proffer statements.  Specifically, during a proffer session with the government on July 10, 2009, RUIZ stated that he first met Sean Werner in approximately 1996 or 1997 and convinced Werner to partner with RUIZ in distributing marijuana in quantities of one to two pounds at a time.[4]  RUIZ further stated that he and Werner continued in this manner for several years.  According to RUIZ, in approximately 2000, Werner began meeting contacts "upstate" and started obtaining much larger quantities of marijuana.  RUIZ admitted that between 2000 and approximately the end of 2002, Werner supplied RUIZ with "20 to 30 pounds of marijuana" at a time.  RUIZ further admitted that he received shipments from Werner "a few times a month" during busy periods, although sometimes RUIZ would take breaks in between shipments.  According to RUIZ, Sean Werner employed numerous workers in his marijuana distribution business, including co-defendants Guy Gantz, Slobodan Pavicevic and Walter Baus.  RUIZ also noted that he typically received the marijuana at a stash house in Forest Hills, broke the larger shipments into one to three-pound bags for resale and distributed the marijuana to several "customers."  RUIZ estimated that he paid somewhere in the neighborhood of $3,500 per pound for the marijuana at wholesale price.

---

[3] As set forth in the PSR, the defendant engaged in ten separate cocaine sales to an undercover officer between July 29, 1988 and September 29, 1988 - each involving at least .5 ounces of cocaine.  PSR ¶ 102.

[4] In connection with this profer session, RUIZ signed a standard "Proffer Agreement," which provides, in pertinent part, that if RUIZ "seeks to qualify for a reduction in sentence under . . . 5C1.2 [i.e. "safety valve" relief]," the Court may rely on "all statements" made by RUIZ during the meeting in determining an appropriate sentence.

4

RUIZ further explained that at the end of 2002, Werner stopped supplying him with marijuana directly. At this time, RUIZ started receiving his marijuana from co-defendant Slobodan Pavicevic [who RUIZ himself identified as one of Werner's workers at the time]. RUIZ admitted to receiving regular shipments of marijuana from Pavicevic into 2003, including at least one shipment of 50 pounds in a single transaction. RUIZ further stated that he was continuing to receive marijuana from Pavicevic at the time of his 2003 arrest by the DEA and conceded that the marijuana involved in that arrest was most likely provided to him by Pavicevic.

RUIZ further explained that following a period in which he received marijuana from a different supplier in 2006, he resumed his relationship with Walter Baus and Slobodan Pavicevic in mid-2007. According to RUIZ, he engaged in four or five separate transactions with Pavicevic involving the distribution of approximately five pounds of marijuana on each occasion. In December 2007, RUIZ learned that Guy Gantz was supplying marijuana to Pavicevic and began dealing directly with Gantz (bypassing Pavicevic). RUIZ received three separate shipments of marijuana from Gantz starting in December 2007. The third and final transaction occurred on March 25, 2008. After picking up 25 pounds of marijuana from Gantz at a stash house maintained by Walter Baus in Queens, RUIZ was stopped by police officers and arrested for marijuana distribution. All of the marijuana supplied by Pavicevic and Gantz was "exotic" marijuana – high grade hydroponic marijuana imported from Canada. Notably, following his arrest by Nassau County Police Department officers, RUIZ stated that his marijuana supplier – Gantz - obtained the marijuana from Native Americans on a reservation in upstate New York.

Thus, RUIZ's repeated claim that he "joined the conspiracy that is the subject of the instant offense on March 25, 2008" (Def. Mem. at 3) is simply not true. RUIZ was one of the original New York based distributors for Canadian marijuana transported through the Akwesasne reservation by David Sunday, Sean Werner, Guy Gantz, Slobodan Pavicevic and Walter Baus and was thus a member of the conspiracy since at least 2000.[5] If

---

[5] In disputing the PSR, RUIZ also argues that Guy Gantz was not named in Count Four of the Indictment - the charge to which RUIZ pled guilty. (Def. Mem. at 2). In fact, Guy Gantz, Slobodan Pavicevic and Walter Baus were all charged in the same marijuana distribution conspiracy as RUIZ, at the same time as RUIZ, and each has subsequently pled guilty to their participation in that

anything, March 25, 2008 marks the <u>end</u> of RUIZ's involvement in the charged conspiracy, not the beginning.

Similarly inaccurate is RUIZ's contention that there is "no evidence" that his arrest for marijuana distribution in 2003 involved "the same conspiracy or even involved any of the same persons." (<u>Id</u>.). By his own admission, RUIZ was being supplied with marijuana by co-defendant Slobodan Pavicevic at the time, who was working under Sean Werner. As with the marijuana he received from Werner and Gantz, the marijuana RUIZ received from Pavicevic in 2003 was smuggled across the Akwesasne reservation by co-defendant David Sunday and was simply a continuation of the same criminal enterprise established in 2000.

To the extent that RUIZ may argue his periods of inactivity during the overall time period of the conspiracy constitute evidence of withdrawal, such an argument is contrary to the law in this Circuit. It is well established that a conspiracy "is presumed to exist until there has been an affirmative showing that it has been terminated, and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." <u>United States v. Spero</u>, 331 F.3d 57, 60 (2d Cir. 2003). Moreover, "mere cessation of activity is not sufficient." <u>United States v. Flaharty</u>, 295 F.3d 182, 192 (2002). "Positive evidence of withdrawal is required in order to provide assurance that the defendant genuinely removed himself from the conspiracy and is not simply attempting an after-the-fact escape from liability." <u>Id</u>. Thus, periods of inactivity alone – even when prompted by an intervening incarceration of the defendant – have been found to be insufficient to demonstrate a defendant's withdrawal from a conspiracy, particularly where there is evidence that the defendant resumed his illegal activities. <u>See</u>, <u>e.g.</u>, <u>Flaharty</u>, 295 F.3d at 193; <u>United States v. Panebianco</u>, 543 F.2d 447, 453 (2d Cir. 1976). Accordingly, the mere fact that RUIZ may have ceased his drug trafficking activities (or at least his drug trafficking activities with members of the charged conspiracy) for certain stretches of time is insufficient to support any contention that he withdrew from the conspiracy.

Moreover, as the Second Circuit has explained, even "resignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law; more is required. Specifically, the defendant must not take any subsequent acts to promote the conspiracy." <u>United States v. Berger</u>, 224 F.3d 107,

---

conspiracy. David Sunday pled guilty to engaging in a continuing criminal enterprise, which included all of the narcotics smuggling activities discussed above.

118 (2000). Thus, since RUIZ unquestionably committed acts in furtherance of the conspiracy as recently as March 2008, he can hardly argue that he withdrew from the conspiracy prior to that date.

In sum, the evidence clearly demonstrates that RUIZ's participation in the charged conspiracy began in 2000.

On February 3, 1989, RUIZ was sentenced to a term of imprisonment of three years to life as a result of his conviction for criminal sale of a controlled substance in the second degree. He was released from incarceration on October 12, 1989. Pursuant to U.S.S.G. §§ 4A1.1 and 4A1.2(e), three criminal history points are assessed for "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense" or "that resulted in the defendant being incarcerated during any part of such fifteen-year period." Since RUIZ's commencement of the instant offense occurred within fifteen years of his release from incarceration on the 1989 conviction, that conviction receives three criminal history points. Accordingly, the PSR correctly placed the defendant in Criminal History Category II.

Moreover, since the defendant has more than one criminal history point, he cannot qualify for safety-valve relief under U.S.S.G. § 5C1.2.

III. <u>Global Disposition</u>

The plea agreement signed by the defendant provides that the defendant may be eligible for a two-level reduction in his offense level calculation if at least 30 defendants in the above-referenced matter pled guilty within the applicable time limits set forth in the agreement. Since well more than 30 of his co-defendants have pled guilty pursuant to agreements with the government, the government respectfully moves for a two-level reduction in the defendant's applicable Guidelines calculation due to the global disposition. If the Court grants the government's motion, the adjusted offense level would effectively be reduced to 19, which yields an advisory Guidelines range of 33 to 41 months based on a Criminal History Category of II.

## Conclusion

For the reasons discussed above, the government respectfully submits that the defendant's objections to the offense level and criminal history calculations in the PSR are without merit, and a sentence within the applicable Guidelines range is appropriate.

Respectfully submitted,

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By: _____/s_____
Steven L. Tiscione
Assistant U.S. Attorney
(718)254-6317

cc: Bruce Barket, Esq. (By ECF)
    Amanda Donat, U.S. Probation